[Crim. No. 44424. Second Dist., Div. Five. June 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDOLPH BATTAGLIA, Defendant and Appellant.

**COUNSEL**

Elston & Tilman and Dawn Tilman for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—Appellant Rudolph Battaglia was found guilty of two counts of lewd or lascivious acts with a child under age 14. (Pen. Code, § 288.) The case was submitted to the trial court on the transcript of the preliminary hearing and testimony given at the suppression hearing. Appellant was placed on probation for five years on condition, inter alia, that he serve six months in county jail.

### FACTS

Appellant sexually molested his stepdaughter on two occasions. The first incident took place in his mother's house in North Hollywood during October 1981. On September 22, 1982, the second attack was made. On that day appellant left the house with the victim. She thought that she was going with him to his place of employment. They did stop at the parking lot of his work place, where he put his stepdaughter in the back seat of the car, climbed in and fondled her. He later continued the car ride all the way to San Francisco. During the trip the victim sat in the front seat with appellant. As he drove he repeatedly molested the child. Upon arriving in San Francisco appellant called his wife to say her daughter would be flying into Los Angeles. She arrived and was met by her mother at approximately 11 o'clock that night.

Meanwhile, Mrs. Battaglia had become concerned about her daughter's absence. She went to the Altadena Sheriff's Department to report that her daughter had been kidnaped. She spoke to three officers, and told them of the October 1981 incident and of her fears for her daughter's welfare. The report was filed, and Mrs. Battaglia was given a file number.

Five days later, on September 27, 1982, appellant sought help from the UCLA Neuropsychiatric Institute. He was assigned to William Ruiz, a licensed clinical social worker and full time employee at the emergency walk-in psychiatric unit, for evaluation. Ruiz identified himself as Mr. Ruiz, a clinical social worker on staff. Based on what appellant told him during the interview that followed, Ruiz suspected that appellant had sexually molested his stepdaughter. Ruiz, under a legal duty pursuant to Penal Code section

11166,[1] relayed the information given to him by appellant to the UCLA child abuse center. He also contacted the campus police, who in turn notified the Los Angeles County Sheriff's Department. Appellant was detained by the campus police until his arrest.

The sheriff's department sent a deputy to interview the victim. She told the deputy about the sexual molestation she had been subjected to by her stepfather. Based on her statements a complaint and an information were filed.

The victim, her mother and Ruiz were called to testify at the preliminary hearing. In response to appellant's invocation of the patient-psychotherapist privilege, the court would not allow Ruiz to testify to the substance of appellant's interview on September 27, 1982. The victim testified to the details of the two incidents during which appellant molested her. Her mother testified, over hearsay objection, to what her daughter told her about the sexual abuse.

On March 31, 1983, appellant made a Penal Code section 1538.5 motion and an Evidence Code section 402 motion to suppress admissions made to Ruiz, and the testimony of both the victim and her mother. The grounds for appellant's motions were that the statements he made to Ruiz were privileged; that Penal Code section 11166 was unconstitutional as applied; that Ruiz was made an agent of the state under the statute, and should have given appellant *Miranda* warnings before the interview; that because the victim was discovered as a result of appellant's admission to Ruiz in the absence of *Miranda* warnings, her testimony was "tainted"; and that the mother's testimony was hearsay. The trial court denied the motions. On appeal these contentions are repeated, and reversal of the judgment is sought.

DISCUSSION

I. STATUTORY INTERPRETATION.

Appellant contends that section 11166, the child abuse reporting statute, is unconstitutionally applied when statements made to a psychotherapist are offered as evidence or used to obtain other evidence which is offered in a

---

[1]Penal Code section 11166 is part of the child abuse reporting act (Pen. Code, § 11165 et seq.). The section states in pertinent part: "[A]ny child care custodian . . . who has knowledge of . . . a child . . . whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance of child abuse to a child protective agency." Under section 11165 social workers are defined as child care custodians, and the sheriffs department is included among the child protective agencies.

criminal proceeding. He maintains that an unlawful application of the statute caused violations of his rights to privacy and to seek medical help. He also contends that his Fifth Amendment rights were violated when his statements to Ruiz were used to obtain other evidence against him.[2]

A. *Right to Privacy and Right to Seek Medical Help.*

To prevent the admission of Ruiz's testimony, appellant invoked the patient-psychotherapist privilege. At the preliminary hearing, appellant was successful. The court found that the relationship between appellant and Ruiz was privileged, and Ruiz was not permitted to testify to admissions made by appellant in the counseling session.

Appellant raised the privilege again at the 1538.5 hearing. At that time he repeated his request that admissions made to Ruiz be suppressed. Unlike the court at the preliminary hearing, the trial court found that the privilege was inapplicable.[3] However, Ruiz was not given an opportunity to testify to appellant's statements. Appellant's case was submitted for trial on the transcript of the preliminary hearing. Thus, although appellant's statements to Ruiz would have been admissible, they were not introduced into evidence.

Appellant also challenges the admission of the victim's testimony on the grounds that his privacy and right to seek medical help were violated. He characterizes both of these rights as fundamental, relying on *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], and *Roe* v. *Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705]. Appellant concedes that where legislation furthers a compelling state interest, fundamental rights may have to "yield." (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 441-442 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

In furtherance of his argument appellant identifies the purpose of section 11166 as child protection. Challenging neither the constitutionality nor the

---

[2]Appellant mentions only by heading in his brief that his Fourth Amendment rights were violated. The facts do not show that the statements he made to Ruiz were the result of an illegal search or seizure of appellant's person, and appellant has failed in his argument to support that suggestion.

[3]The trial court relied on two code sections. Under Penal Code section 11171, subdivision (b), the psychotherapist-patient privilege does not apply "to information reported pursuant to [the child abuse reporting act] *in any court proceeding . . . .*" (Italics added.) Pursuant to Evidence Code section 1028, "[u]nless the psychotherapist is a person described in subdivision (a) [psychiatrist] or (b) [psychologist] of Section 1010, there is no privilege under this article in a criminal proceeding." Ruiz, a licensed clinical social worker, is a psychotherapist as described in Evidence Code section 1010, subdivision (c).

compelling nature of that purpose, he maintains that section 11166 can be constitutionally enforced by notifying the child protective agency of the suspected abuse and removing the victim from the home where the abuse took place. The abrogation of his privacy which was necessary to locate his stepdaughter, i.e., the report to the sheriff's department by Ruiz, was permissible because it furthered the child protection purposes of section 11166. But, he contends, the admission of her testimony in a criminal proceeding against him goes beyond what is necessary to achieve the ends of the statute, and therefore impermissibly infringes on his constitutional rights.[4] Appellant has too narrowly stated the purposes of the statute.

Recently the Supreme Court had an opportunity to review certain aspects of the child abuse reporting act, including section 11166, in *People* v. *Stritzinger, supra,* 34 Cal.3d 505. The interest the state seeks to further by the statute was defined as "detection and prevention of child abuse." (*Id.,* at pp. 511-512.) The court continued: "The Legislature obviously intended to provide specific exception to the general privileges set out in the Evidence Code (Evid. Code, §§ 994, 1014) so that incidents of child abuse might be promptly investigated and *prosecuted.*" (*Id.,* at p. 512, italics added.) Justice Kaus, in his concurrence with the majority on this issue, stated: "In the area of sexual abuse of children by adults, the law, presumably, has three objectives: *to punish the abuser,* to identify and protect his victims and to cure him in order to protect future potential victims." (*Id.,* at p. 523, Kaus, J., conc. and dis., italics added.) The court has clearly identified prosecution of child molesters as a purpose of the act.

In light of *Stritzinger,* the limitations on the availability of a victim's testimony suggested by appellant are unacceptable. Prosecution is one of the legislative purposes. That purpose could not be fulfilled merely by removing the child from the environment in which the crime took place. Once located through the methods devised by the Legislature and codified in section 11166, the victim must be heard against the molester, if he or she is willing to testify, to achieve the ends of the statute. Moreover, had it not been for the favorable ruling appellant received at the preliminary hearing, the testimony of Ruiz would have been admitted into evidence. Because Ruiz is a licensed clinical social worker, not a psychiatrist or psychologist, his testimony at appellant's trial was not privileged. (Evid. Code, § 1028.) Even if the psychotherapist-patient privilege had been applicable to the relationship between appellant and Ruiz, however, it would not have prevented Ruiz's testimony. The Legislature took the unusual step of ex-

---

[4]Appellant states in his brief that his stepdaughter also testified at a juvenile court hearing held for the purpose of having her declared a ward of the state. He does not challenge the victim's testimony for this purpose. There is no substantiation of such testimony in the record before us.

cepting from the privilege information reported pursuant to the act. It would be a grave injustice for an accused to be able to circumvent the purposes of the statute by suppressing testimony which would not in any situation be privileged—the testimony of the victim against the molester.

B. *Fifth Amendment.*

■ Appellant contends that the victim's testimony should have been suppressed as a "fruit of the poisonous tree" because she was discovered by the police through a violation of his Fifth Amendment rights. Relying on *Estelle* v. *Smith* (1981) 451 U.S. 454 [68 L.Ed.2d 359, 101 S.Ct. 1866], he contends that Ruiz became an agent of the state by virtue of the statute that compelled him to report suspected child abuse and was bound to comply with the constitutional safeguards that must be observed by law enforcement officials. Because he received no *Miranda* warnings from Ruiz, he maintains that his Fifth Amendment rights were violated. This argument is without merit.

In *Estelle* an indicted murder suspect was interviewed in jail by a court-appointed psychiatrist to determine competency to stand trial. The psychiatrist later testified at the sentencing phase of the trial on the issue of defendant's future dangerousness. During the testimony he referred to statements made by the defendant in the interview. The Supreme Court, in deciding whether the testimony violated defendant's Fifth Amendment rights, reviewed *Miranda* and several of its progeny and then concluded that defendant's statements to the psychiatrist "were not 'given freely and voluntarily without any compelling influences.'" (*Estelle* v. *Smith, supra,* 451 U.S. at p. 469 [68 L.Ed.2d at p. 373], citing *Miranda* v. *Arizona* (1966) 384 U.S. 436, 478 [16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974].) "[O]nly if [defendant] had been apprised of his rights and had knowingly decided to waive them" (*Estelle* v. *Smith, supra,* at p. 469) would the statements be admissible. The court found that the psychiatrist's role became "essentially like that of an agent of the State" when he testified at the penalty phase by "recounting unwarned statements made in a postarrest custodial setting." (*Id.,* at p. 467 [68 L.Ed.2d at p. 372].)

Contrary to appellant's contention, *Estelle* does not lead to the conclusion that Ruiz was acting as a state agent and was therefore required to give appellant *Miranda* warnings. In *Estelle* defendant was questioned while in custody. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant" unless the *Miranda* warnings were given. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706], italics added.) In a noncustodial setting such as we have before us a listener who knows he or she will report

statements to a state agency need not give the speaker *Miranda* warnings. (*Hoffa* v. *United States* (1966) 385 U.S. 294, 304 [17 L.Ed.2d 374, 383, 87 S.Ct. 408]; *People* v. *Ragen* (1968) 262 Cal.App.2d 392, 399 [68 Cal.Rptr. 700], cert. den. 393 U.S. 1000 [21 L.Ed.2d 465, 89 S.Ct. 489]; *People* v. *Arnold* (1967) 66 Cal.2d 438, 444 [58 Cal.Rptr. 115, 426 P.2d 515]; *People* v. *Brandow* (1970) 12 Cal.App.3d 749 [90 Cal.Rptr. 891]; *People* v. *Caravella* (1970) 5 Cal.App.3d 931, 934 [85 Cal.Rptr. 576].) Even when the listener is a police officer, statements made in a noncustodial setting are admissible against the speaker. (*Oregon* v. *Mathiason* (1977) 429 U.S. 492 [50 L.Ed.2d 714, 97 S.Ct. 711].)

In applying these principles, we find that appellant's Fifth Amendment right was not violated. There was no custody. Appellant was under no compulsion to go to the clinic and, once there, was under no obligation to stay. Appellant's statements to Ruiz were completely voluntary, as the record shows.

Finding no violation we of course do not find error in admitting the victim's testimony. But even if appellant had suffered a Fifth Amendment violation, suppression of his stepdaughter's testimony would not necessarily follow. The next step would be the attenuation analysis announced in *United States* v. *Ceccolini* (1978) 435 U.S. 268, 276 [55 L.Ed.2d 268, 277, 98 S.Ct. 1054], and applied by our Supreme Court in *People* v. *Superior Court (Sosa)* (1982) 31 Cal.3d 883, 892-894 [185 Cal.Rptr. 113, 649 P.2d 696]. This analysis was designed to assure that suppressing the testimony of a witness would serve the purposes behind the exclusionary rule. An even more careful examination would be required by a court requested to suppress the testimony of a victim. Because of our conclusion with respect to appellant's underlying Fifth Amendment contention, however, we need not apply the attenuation analysis here.

II. HEARSAY CONTENTION.

Because we find that the victim's testimony was properly admitted, appellant's contention that the testimony of the victim's mother was hearsay and should have been excluded also must fail. ■ Where the victim of a sex offense testifies to its commission, evidence of a complaint made by the victim, not otherwise admissible as a spontaneous declaration, is nevertheless admissible over a hearsay objection. The prosecution can introduce the evidence to prevent the assumption that the offense did not occur because no complaint was made. (*People* v. *Panky* (1978) 82 Cal.App.3d 772, 779 [147 Cal.Rptr. 341].) The victim had already testified to the molestation when her mother was called. The mother's testimony that her daughter had

told her that she had been sexually abused by her stepfather falls squarely within the *Panky* rule.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.