[No. H015142. Sixth Dist. Nov. 25, 1997.]

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff and Respondent, v.
CENTURY INDEMNITY COMPANY, Defendant and Appellant.

[No. H015728. Sixth Dist. Nov. 25, 1997.]

CENTURY INDEMNITY COMPANY, Cross-complainant and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Cross-defendant and Respondent.

**COUNSEL**

Adams, Nye, Sinunu & Walker, Paul R. H. Walker, Brian E. Hawes, O'Melveny & Meyers, Martin S. Checov and Angela C. Mok for Defendant and Appellant and for Cross-complainant and Appellant.

Ropers, Majeski, Kohn & Bentley, Todd A. Roberts and Kevin T. Hunsaker for Plaintiff and Respondent and for Cross-defendant and Respondent.

## OPINION

## WUNDERLICH, J.—

### I. *Introduction*

In 1987, three former students in the alternative school program at Cubberly High School in the Palo Alto Unified School District (District) filed separate but similar actions against four teachers and the District, which, according to State Farm, were later consolidated for trial. In these actions, the plaintiffs alleged that between 1977 and 1979, Tom Derrick, one of the teachers, sexually molested them and neither he nor the other defendant teachers reported information about the molestation to proper authorities. Derrick tendered his defense to Insurance Company of North America (INA), the District's insurer. Under the District's policy, INA agreed to pay all sums the "Insured" became legally obligated to pay as damages because of personal injury, among other things. The policy defined "Insured" to include teachers, among others, "while acting within the scope of their duties as such." When a demurrer based on the statute of limitations was overruled, INA declined to defend Derrick. He tendered his defense to State Farm Fire and Casualty Company (State Farm), which accepted it under his homeowners policy. INA ultimately settled the cases against Derrick.

### II. *Statement of the Case*

State Farm filed an action against Century Indemnity Company (Century, INA's successor) to recover the cost of defending Derrick.[1] State Farm moved for summary judgment, claiming Century had a duty to defend Derrick and therefore an obligation to reimburse State Farm for providing his defense. The trial court agreed and granted the motion.

Century appeals from a judgment entered after summary judgment was granted. Century claims the trial court erred in granting the motion because as a matter of law it had no duty to defend Derrick and, therefore, no obligation to reimburse State Farm. Even if it had a duty to defend and reimburse, Century further claims summary judgment was improper because there were triable issues of fact concerning the amount of reimbursement.[2]

We conclude that the trial court erred in granting State Farm summary judgment and reverse.

---

[1]The original complaint named Insurance Company of North America and others. For convenience, however, we treat Century as the original defendant.

[2]The judgment entered did not dispose of all issues in the case because Century had filed a cross-complaint against State Farm. Consequently, State Farm moved for judgment on the pleadings, and the trial court granted the motion and entered judgment. Century filed a notice of appeal from that judgment as well. Upon stipulation by the parties, we consolidated the two appeals.

### III.  *Standard of Review*

█  In reviewing an order granting a plaintiff's motion for summary judgment, we independently determine whether the record presented to the trial court reflects the existence of undisputed facts that entitle plaintiff to judgment as a matter of law. (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1015-1016 [50 Cal.Rptr.2d 892]; *Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

### IV.  *Showing re Century's Duty to Defend Derrick*[3]

The evidence State Farm presented to establish Century's duty to defend Derrick and reimburse State Farm for doing so is undisputed.[4]

### A.  *The Century Insurance Policy*

Under an insurance policy issued to the District, Century agreed to pay all sums the District is legally obligated to pay as damages because of bodily and/or personal injury caused by its teachers and employees while acting within the scope of their duties.

### B.  *The Complaints*

Maura F. Daly, Kit Fouts, and Andrea L. Moore filed separate complaints, naming as defendants the District and four teachers/counselors: Tom Derrick, Chloe Ann Kamprath, Dorthea Hamilton, and Phil Bliss. The complaints were identical, in that each asserted four causes of action against

---

[3]Before proceeding to the main issue, we stop briefly to reject Century's assertion that State Farm is barred from seeking reimbursement because in settling the tort actions, Derrick released Century and the District from all claims arising from them, including the cost of his defense. This statement is included in the factual presentation of Century's brief rather than its argument section. Moreover, State Farm argues that Derrick's release did not foreclose its right to seek reimbursement because Century knew *before* Derrick signed the release that State Farm intended to do so. (See *Griffin v. Calistro* (1991) 229 Cal.App.3d 193, 196 [280 Cal.Rptr. 30].) Century makes no effort to rebut this argument in its reply brief. Indeed, it does not even address the issue.

[4]Given the standard of review on appeal, we reject State Farm's claim that the principles of "theory of the trial" estop Century from arguing for the first time on appeal that the undisputed facts do not establish a duty. The doctrine is inapplicable because in substance, Century denied in its answer to the complaint that it had a duty to defend Derrick. Thus, it became State Farm's burden to prove it in the motion for summary judgment. Whether, on undisputed facts, Century had such a duty is a question of law. (*State Farm Mut. Auto. Ins. Co. v. Longden* (1987) 197 Cal.App.3d 226, 233 [242 Cal.Rptr. 726].) *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-29 [21 Cal.Rptr.2d 104] is distinguishable and, therefore, does not persuade us otherwise.

Derrick individually—intentional sexual molestation, intentional and negligent infliction of emotional distress, and negligence; four causes of action against Derrick, Kamprath, Hamilton and Bliss—negligence, negligence per se, intentional and negligent infliction of emotional distress; and ten causes of action against the District, all based on the theory of respondeat superior.

### 1. Claims Solely Against Derrick

In all of the complaints, the causes of action against Derrick individually were based on allegations of sexual molestation. However, in each complaint, those allegations were different.

#### a. Maura F. Daly

Maura F. Daly alleged that Derrick "sexually molested and abused [her] by acts including but not limited to mouth-to-mouth kissing, kissing [her] breasts and genitals, manually stimulating [her] clitoris and vaginal area, orally copulating [her] genitals, having [her] orally copulate his genitals, and inserting his penis into [her] anus."

#### b. Kit Fouts

Kit Fouts alleged acts including but not limited to "caressing, kissing and sucking on [her] breasts, fondling and manually stimulating [her] clitoris and vaginal area, orally copulating [her] genitals, and having [her] orally copulate his genitals, including coming to an orgasm and ejaculating in her mouth."

#### c. Andrea L. Moore

Andrea L. Moore alleged that one night, Derrick put his arm on her shoulders for a few minutes, then moved his hand under her shirt, touched her upper body, unfastened her pants, and tried to put his hand inside them. She further alleged that the next morning, he "came up to her and picked her up with one arm under her back and the other under her knees, holding her this way for a few minutes before putting her down." She alleged that she was "embarrassed and confused" by his behavior.

### 2. Claims Against Derrick, Kamprath, Hamilton, and Bliss

The claims against Derrick, Kamprath, Hamilton, and Bliss are based on their failure to report to proper authorities information they obtained about Derrick's alleged sexual misconduct. The factual allegations in each complaint are basically the same.

Each plaintiff learned that Derrick had sexual contact with other students. Daly told Hamilton about her experience, and Fouts told Kamprath about her experience. Neither Hamilton nor Kamprath reported these disclosures to the District, the police, or child protective services. Thereafter, Daly, Fouts, and Moore were asked to attend a meeting with Derrick and other teachers to "confront" Derrick with their allegations and decide what to do.

Daly, Fouts, and Moore attended the meeting with Derrick, Hamilton, Kamprath, and Bliss. Before it started, Hamilton and Kamprath said that if the allegations of molestation were taken to the school administration or made public, the alternative school program at Cubberly would be terminated, and plaintiffs would be deemed responsible. Plaintiffs were then asked to reveal what they accused Derrick of doing. Feeling intimidated and unsupported, none described in any physical detail what he had done. Derrick then responded that his conduct had been "sensual," not "sexual" and that the three girls could have said "no." Thereafter, Hamilton, Kamprath, and Bliss concluded that Derrick had not done anything to warrant his removal as a teacher and reiterated that the girls would be responsible for destroying the alternative program if they further disclosed their accusations. The teachers then proposed an agreement: If the girls kept quiet, Derrick would leave the program for another position in the District. Embarrassed and intimidated, Daly, Fouts, and Moore agreed. After the meeting, neither Derrick, Hamilton, Kamprath, nor Bliss reported the accusations of sexual conduct to proper authorities.

## C. Deposition Testimony by Plaintiffs

In support of its motion, State Farm also submitted excerpts from the depositions of each plaintiff.

### 1. Maura F. Daly

Daly testified that one evening, during a school retreat in the Santa Cruz Mountains, Derrick gave some students massages and then offered her one. He massaged her back, asked her to turn over, and massaged her front underneath her shirt. During that trip, she and Derrick and others were walking in the woods. He put his arm around her, slowed down until the others were out of sight, and then kissed her, touched her breasts, and had her touch his penis. She recalled orally copulating him to orgasm in a large building.

Daly testified that several weeks later, Derrick and a group of students went out to a movie. He drove her home and stopped. He told her not to be

nervous, kissed her, touched her breasts, and had her orally copulate him to orgasm. He may have orally copulated her.

She also recalled two occasions when Derrick took her to his house. One time he kissed her, touched her breasts, and they orally copulated each other. Another time, he sodomized her.

### 2. *Kit Fouts*

Fouts testified that she went on a camping trip with Derrick and other students. One night it rained, and she got into a van with the others. Derrick told her to take off her wet clothing. She resisted but did so. He did not have any clothes on either. He then started wiping moisture off her with his hands. As she got warmer, he began to massage her and then fondle her breasts, and then put his hands on her buttocks and between her legs. She told him "no." Nevertheless, he put his hands on her breasts and then started massaging her again. After a while, he began to grope her, putting his hands between her legs and trying to digitally penetrate her vagina. She again told him "no," but he did not stop, saying it was "okay." He turned her over, kissed and licked her breasts, reinserted his fingers, and manipulated her clitoris. He then had her orally copulate him and ejaculated in her mouth.

### 3. *Andrea L. Moore*

Moore testified about a field trip to the cabin in Arcata. Late one night, she was sitting in the dark with others watching the fire ebb. Derrick sat down on the sofa next to her and put his arm around her. He kept it there for five minutes and then put his other hand on her stomach and then after a moment he put it underneath the front of her shirt and touched her breast. After a time, he slowly moved his hand down to her pants and tried to get his hand inside them. She stood up, feeling uncomfortable with his conduct and thinking others in the room could see what he was doing.

Moore further related that the next morning, she was on the porch alone, and Derrick came up to her, swept her off her feet, cradled her in his arms, rocked her, and carried her around outside for a couple of minutes, talking, laughing, and smiling. When they got close to a fence, Moore grabbed onto a pole and held it so he could not carry her farther. He then put her down. Again, she was afraid others in the house were looking outside and saw them.

## V. *Applicable Legal Principles*

### A. *The Duty to Defend*

A liability insurer owes a broad duty to defend its insured against claims that create "a potential for indemnity." (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792] (hereafter *Horace Mann*).) " '[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' " (*Ibid.*, quoting *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168], italics in *Gray*.) Thus, an insurer may have a duty to defend its insured in an action in which no damages are ultimately awarded. (*Horace Mann, supra,* 4 Cal.4th 1076.)

In determining whether an insurer has a duty to defend, a court first compares the allegations in the complaint with terms of the policy. Next, it looks to facts that may not have been alleged but were known to the insurer when the action was filed. (*Horace Mann, supra,* 4 Cal.4th at p. 1081; *David Kleis, Inc.* v. *Superior Court* (1995) 37 Cal.App.4th 1035, 1045 [44 Cal.Rptr.2d 181].) "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim. [Citations.] Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." (*Horace Mann, supra,* 4 Cal.4th at p. 1081.)

In this case, the determinative issue concerning Century's potential liability and thus its duty to defend Derrick (and ultimately reimburse State Farm for doing so) was whether the alleged (mis)conduct came within the policy covering damages caused by teachers "while acting within the scope of their duties as such."

### B. *Sexual Misconduct Outside Scope of Employment*

In *John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438 [256 Cal.Rptr. 766, 769 P.2d 948], the court held that a school district could not be vicariously liable to the victim of a teacher's alleged acts of molestation because such misconduct was outside the course and scope of the teacher's employment.[5] (48 Cal.3d at pp. 441, 447; cf. *Jeffrey E.* v. *Central Baptist Church* (1988) 197 Cal.App.3d 718 [243 Cal.Rptr. 128] [church not liable

---

[5] "[A]n employer's liability extends to torts of an employee committed within the scope of his employment. [Citation.] This includes willful and malicious torts as well as negligence. [Citation.]" (*Martinez* v. *Hagopian* (1986) 182 Cal.App.3d 1223, 1227 [227 Cal.Rptr. 763].)

for sexual abuse of minor by Sunday school teacher]; *Rita M.* v. *Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453 [232 Cal.Rptr. 685] [archbishop not liable for sexual relations between seven priests and minor parishioner]; *Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133 [176 Cal.Rptr. 287] [school district not liable for janitor's rape of student].) As the court later explained in *Farmers Ins. Group* v. *County of Santa Clara* (1995) 11 Cal.4th 992 [47 Cal.Rptr.2d 478, 906 P.2d 440] (*Farmers*), the connection between a teacher's instructional and supervisory authority and the abuse of that authority to indulge in personal, sexual misconduct " 'is simply too attenuated to deem a sexual assault as falling within the range of risks allocable to a teacher's employer.' " (*Id.* at p. 1007.) Indeed, except where sexual misconduct by on-duty police officers against members of the public is involved (e.g., *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202 [285 Cal.Rptr. 99, 814 P.2d 1341]; *White* v. *County of Orange* (1985) 166 Cal.App.3d 566 [212 Cal.Rptr. 493]), it is generally held that an employer is not vicariously liable to a third party victim for sexual misconduct by an employee because ". . . it could not be demonstrated that the various acts of sexual misconduct arose from the conduct of the respective enterprises." (*Farmers, supra,* 11 Cal.4th at p. 1007.) Rather, in most instances, the sexual misconduct is undertaken for personal gratification and not for a purpose connected to employment. Moreover, such misconduct is usually not engendered by events or conditions relating to any employment duties or tasks; nor is it necessary to the employees' comfort, convenience, health, or welfare while at work. (*Ibid.*)

Since a school district is not potentially vicariously liable for damages arising from a teacher's molestation of a student,[6] it follows that the district's liability insurer has no duty to defend the teacher against an action by the student and, therefore, would not become obligated to reimburse the carrier who provides a defense. (Cf., *Farmers, supra,* 11 Cal.4th 992 [county's insurer had no duty to defend county employee accused of sexual misconduct and no duty to indemnify the insurer who provided the defense].)

### C. *Horace Mann v. Barbara B.*

Notwithstanding the authority discussed above, State Farm claims that Century's duty to defend arose under *Horace Mann, supra,* 4 Cal.4th 1076.

---

[6]Of course, a district may be liable to the victim of a teacher's sexual misconduct based on its own negligence in hiring or failing to properly supervise the teacher. (*John R.* v. *Oakland Unified School Dist., supra,* 48 Cal.3d at p. 453 (conc. & dis. opn. of Mosk, J.); *Virginia G.* v. *ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1855 [19 Cal.Rptr.2d 671].)

In *Horace Mann*, a teacher pleaded no contest to one count of lewd conduct with a student. Later the student/victim and her parents sued, alleging intentional and negligent sexual molestation *and other harassing and publicly embarrassing conduct not amounting to molestation.*[7] (*Horace Mann, supra,* 4 Cal.4th at pp. 1078-1079.) The teacher tendered the defense to his insurer under an educator's liability policy, which covered damages arising from his educational employment activities. The insurer sought declaratory relief concerning its duty to defend and/or indemnify. It argued against such a duty, claiming the teacher's conduct was intentional and unrelated to educational activities. The trial court agreed, finding that all of the alleged conduct was intentional and sexual or related to the molestation. (*Id.* at pp. 1080-1081.) The Supreme Court disagreed.

The court refused to assume that the alleged misconduct *not amounting to molestation* was a part of or directly related to the uninsurable molestation or that it did not arise in the course of the defendant's educational employment activities. Instead, the court found that the alleged conduct, together with unresolved factual disputes concerning it, established the potential for liability and, therefore the duty to defend. (*Horace Mann, supra,* 4 Cal.4th at pp. 1082-1083.)

In particular, the court focused on the teacher's potential liability for negligence based on the alleged nonsexual conduct with the victim in front of other students. The court explained that the one instance of criminal sexual misconduct did not automatically eliminate the duty to defend against these other allegations because the insurer did not have information "that those [other] allegations were related to the molestation, or that the other alleged misconduct was outside the course of . . . educational employment activities." (*Horace Mann, supra,* 4 Cal.4th at p. 1083.) "Neither precedent nor logic dictates that a molester cannot also be liable for torts of negligence

---

[7]The conduct falling into the latter category was enumerated as follows: (1) giving the victim tardy notes whenever she asked for one; (2) pulling her from class for the entire class; (3) allowing her to sit on his lap, kissing her forehead, putting his arm around her, and hugging her, all in front of other students; (4) allowing her to be in the band room alone or with just him and another female student; (5) making sexual and sarcastic jokes concerning her in front of the band class; (6) referring to the way a girl dressed; (7) making jokes offensive to females; (8) generally discussing sexual conduct in front of the class; (9) being alone in his office with the victim; (10) allowing and perpetuating rumors among the students of a relationship between him and the victim; (11) insinuating that she could be bought for a dollar; (12) joking about girls returning to see him when they are 18 years old; (13) joking about his female students in front of his friends; (14) referring to the victim as "Pebbles" and "jail bait" in front of students, friends, other teachers, and parents; (15) discussing with teachers her being with him whenever she was late or absent from class; (16) attempting to get her alone; and (17) threatening to harm himself. (*Horace Mann, supra,* 4 Cal.4th at p. 1079, fn. 2.)

against the victim which are apart from, and not integral to, the molestation." (*Ibid.*) The court emphasized the lack of evidence to establish "the chronology or sequence of events comprising the alleged misconduct or that these actions were integral to the molestation. For instance, the record is devoid of evidence demonstrating that [the teacher's] acts of public embarrassment of [the victim] occurred in such close temporal and spatial proximity to the molestation as to *compel* the conclusion that they are inseparable from it for purposes of determining whether [the insurer] owed a duty to defend [him]." (*Id.* at p. 1084, italics in original.)

The court also pointed out that the "gravamen" of the teacher's other " 'parasexual' " conduct—i.e., letting her sit on his lap and hugging and kissing her—was that he did these things in front of other students, that he publicly embarrassed her, and not that he did something that was so inherently harmful or amounting to sexual molestation as to fall outside policy coverage as a matter of law. (*Horace Mann, supra,* 4 Cal.4th at p. 1084.) "The *possibility* of a duty to indemnify remains because the alleged acts arose from [the teacher's] interaction with students in the course of his educational activities. While one might reasonably question the appropriateness of teachers engaging in such behavior *in the classroom,* we cannot say, as a matter of law on the record before us, that such conduct does not raise a possibility of a duty to indemnify under the policy of insurance which was issued to [him]." (*Id.* at p. 1085, italics in original.) The court further explained that in many cases allegations of molestation and other misconduct "may be inseparably intertwined (e.g., when the molestation allegedly was carried on in secret, without any distinct injury to the plaintiff's social relations)." (*Ibid.*) However, in the case before it the teacher's nolo contendere plea to one count of lewd conduct established his sexual molestation "but his alleged public embarrassment of [her] affected a different interest." (*Ibid.*)

Finally, the court dismissed as exaggerated the insurer's fear "of a perpetual, indefeasible defense obligation" and rejected its claim that if the court found a duty to defend it would, in effect, grant plaintiffs a "license" to plead around caselaw that clearly and unequivocally exempts an insurer from having to defend an insured against an action for molestation. "We do not sanction relabelling child molestation as negligence in order to secure insurance coverage for the plaintiff's injuries. We merely hold to the established rule that a potential for coverage, whether found within the four corners of the complaint or in facts extrinsic to it, gives rise to the defense duty." (*Horace Mann, supra,* 4 Cal.4th at p. 1086.)

## VI. *Century's Duty to Defend*

As noted, State Farm claims *Horace Mann* controls because the underlying complaints were not based *solely* on allegations of sexual misconduct or molestation. It points out that each complaint contained causes of action against Derrick based on *nonsexual conduct*: the failure to report.[8] State Farm asserts that the complaints alleged "improper conduct" with students similar, if not identical, to that alleged in *Horace Mann*. (See fn. 7, *ante*, p. 659.)

### A. *Claims Based on Nonsexual Conduct: Failure to Report*

State Farm argues that the claims against Derrick and the other teachers for failure to report are like the allegations of nonsexual misconduct in *Horace Mann*, distinct and separable from the allegations of molestation. Thus, because Derrick was potentially liable on these claims, Century had a duty to defend him. (See *Horace Mann, supra*, 4 Cal.4th at p. 1081.) Indeed, State Farm argues that Century implicitly conceded this duty when it agreed to defend the other teachers against these claims. We are unpersuaded.

That the plaintiffs could plead causes of action against Derrick based on nonsexual misconduct did not automatically establish potential liability and thereby trigger Century's duty to defend him.

For example, in *Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643 [38 Cal.Rptr.2d 131], the plaintiff sued a priest, alleging that over the years he counseled her, he obtained information about her and then used it to induce her into having sexual relations with him. (*Id.* at p. 646.) On appeal, one issue before the court was whether the complaint stated a claim for nonsexual misconduct that would then be covered under a policy that specifically excluded sexual misconduct. The court reviewed *Horace Mann*, noting that an allegation of sexual misconduct does not preclude coverage if other alleged misconduct is covered. (*Id.* at p. 652.) Turning to the complaint, the court then stated, "[W]e find the allegations [in the complaint] of nonsexual conduct—obtaining information about plaintiff during counseling and using this information and misusing counseling techniques to create transference and to control and induce plaintiff's behavior——were 'inseparably intertwined' with the sexual misconduct. [Citation.] Plaintiff's complaint alleges [the priest's] misuse of his counseling position resulted in the inducement for her to engage in sexual relations with him. He used the

---

[8]Each plaintiff asserted this claim in causes of action for negligence, negligence per se, and negligent infliction of emotional distress.

information he learned about plaintiff to influence and control her behavior and he utilized the feelings created by transference to create a sexual relationship. None of the allegations of [the priest's] malfeasance in counseling stands separate from the allegation of sexual misconduct. Accordingly, there is no coverage . . . ." (*Id.* at p. 653.)

The court cited *Houg* v. *State Farm Fire and Cas. Co.* (Minn. Ct. App. 1992) 481 N.W.2d 393 as support. There, too the plaintiff sued her pastor, alleging exploitation of the counseling relationship to seduce her. The pastor tendered the defense to his insurer, claiming it had a duty to defend based on claims of negligent counseling. The court disagreed. "[A]ny alleged negligence in Houg's counseling centers on his entering into a sexual relationship with [the victim]. Any negligent counseling is so intertwined with Houg's sexual exploitation of a psychologically dependent person as to be inseparable." (*Id.* at p. 397.)

As these cases illustrate, we must look beneath the surface of the pleadings to the substance of the allegations to determine whether the alleged sexual and nonsexual misconduct are separable.

We disagree with State Farm's view that Derrick's alleged negligent failure to report is akin to the allegations of nonsexual misconduct in *Horace Mann*. There, the record was devoid of any evidence, chronological or otherwise, linking the nonsexual conduct to the single count of lewd conduct for which the teacher was convicted. Here, by contrast, the failure to report was directly and necessarily linked to the molestation because it is information about that molestation that Derrick failed to report. Indeed, the causes of action for failure to report incorporate by reference the allegations of Derrick's sexual misconduct. Moreover, realistically, a subsequent failure to report one's own unlawful sexual contact with a minor is not distinct and separable conduct; rather, it is an integral part of the shroud of secrecy that typically hides molestation and is essential to its perpetration.

We observe that in *Horace Mann*, the gravamen of the alleged nonsexual misconduct was the injurious *public embarrassment*. Thus, the victim sought compensation for damages arising from injury to an interest different from that injured by the molestation. Here, by statute, teachers, among others, have a duty to report reasonable suspicion of sexual and/or physical abuse. (See Pen. Code, § 11164.) The purpose of this duty is to inform authorities

as early as possible and thereby protect the victim from further abuse and also bring the alleged abuser to justice. (See Pen. Code, § 11164, subd. (b); *People* v. *Younghanz* (1984) 156 Cal.App.3d 811 [202 Cal.Rptr. 907]; *People* v. *Battaglia* (1984) 156 Cal.App.3d 1058 [203 Cal.Rptr. 370].) In our view, therefore, the gravamen of alleged negligent failure to report and the alleged molestation is essentially the same: an injury to the minor's interest in protecting and preserving his or her physical integrity from sexual misconduct by Derrick.

We next note that State Farm treats Derrick and the other teachers the same with respect to the claims based on the failure to report. However, in doing so, State Farm conveniently ignores obvious and material differences between them. The other teachers' potential liability arose solely from their failure to properly respond to information about sexual misconduct *by another teacher*. Moreover, they were not potentially liable for injury caused by the molestation itself. Derrick, on the other hand, failed to report information about *his own* sexual misconduct, and it is this misconduct that forms the factual basis of the claims against him for molestation. As noted, the allegations of sexual misconduct were incorporated in the claims based on failure to report. Thus, Derrick's potential liability for failing to report is but a continuation of his potential liability for the alleged molestation. Indeed, if the failure to report was negligent, it still would not be actionable in the absence of damages. We doubt the existence of compensable damages for pain, suffering, emotional distress, etc., arising from Derrick's failure to report, if the plaintiffs' underlying accusations of molestation against him were false.

Finally, if Century had a duty to defend Derrick against claims based on failure to report, what would emerge is a simple way to plead around the caselaw that precludes a duty to defend teachers against claims of molestation. One need only allege that the teacher/molester negligently failed to report the information known to him or her that would lead a reasonable person to suspect a student had been molested. As noted, the court in *Horace Mann* did not intend for its decision to result in such facile circumvention.

In sum, Derrick's allegedly negligent failure to report is so directly related to and inseparable from the uninsurable molestation itself that as a matter of law the alleged negligence does not trigger Century's duty to defend under the District's policy or to indemnify State Farm for providing Derrick's defense.

We acknowledge that in *Jane D.* v. *Ordinary Mutual, supra,* 32 Cal.App.4th 643 and *Houg* v. *State Farm Fire and Cas. Co., supra,* 481

N.W.2d 393, the allegedly negligent nonsexual conduct *preceded* the sexual conduct and thus helped facilitate it and that here, Derrick's failure to report followed the molestation and thus did not directly facilitate its commission. Nevertheless, we do not believe such a facilitative nexus is necessary to preclude a duty to defend against allegations of nonsexual misconduct. As discussed above, Derrick's failure to report the information known to him and in part disclosed to the other teachers related directly and solely to the molestation itself, it tended to prevent its discovery and the assignment of his culpability therefor, and it extended, rather than created, his potential liability. These circumstances distinguish this case from *Horace Mann* and are sufficient to merge the negligence and molestation claims against Derrick for purposes of determining Century's duty to defend.[9]

### B. *Other Physical Contact With Plaintiffs*

■ State Farm argues that Century's duty to defend also arose because the plaintiffs alleged, and their depositions revealed, conduct "similar" to that alleged in *Horace Mann*, such as that "he allowed the students to sit on his lap, he put his arm around them, kissed them, gave them massages and picked them up in his arms when other students could see." In particular, State Farm notes Moore's testimony that Derrick swept her off her feet and carried her around like a new bride for a few minutes. For the most part, this argument is unpersuasive.

When viewed in isolation, certain acts against Daly and Fouts were not inherently sexual or harmful. However, here the evidence, unlike that in *Horace Mann*, establishes the temporal and spatial context in which all alleged physical misconduct occurred. As is clear from our summary of the record, all physical contact between Derrick and Daly and Fouts was integral to and inseparable from the alleged molestation, in that it was either concurrent with or a prelude to it and part of indivisible incidents of molestation.

---

[9]At oral argument, State Farm argued that Derrick was potentially liable for his nonsexual conduct at the meeting with plaintiffs. Again, we disagree.

Derrick's conduct at the meeting was materially different from that of the other teachers. As alleged in the complaints, plaintiffs told the other teachers about Derrick's misconduct. These teachers asked plaintiffs to attend the meeting. Before the meeting these teachers intimidated plaintiffs. At the meeting, they made plaintiffs confront Derrick, gave Derrick an opportunity to respond, and, acting as quasi-judges, concluded that Derrick had done nothing wrong. Then, they intimidated plaintiffs again, warning that plaintiffs would be blamed if the alternative program was terminated.

Derrick, on the other hand, was the accused, and he denied any improper sexual conduct. Like his failure to report, this denial is directly connected to the molestation and a necessary and inseparable aspect of the secrecy surrounding it.

Thus, the record establishes the impossibility that some of Derrick's acts toward them could have been mere negligent, nonsexual touching apart from the molestation.

We cannot reach the same conclusion concerning Moore. As noted above, her complaint and deposition reveal that one evening, Derrick put his arm on her shoulders for a few minutes, then moved his hand under her shirt, touched her upper body, unfastened her pants, and tried to put his hand inside them. Notwithstanding her deposition testimony that this made her feel uncomfortable because she thought others in the darkened room were aware something was happening between her and Derrick, the acts comprising this incident were indivisible parts of a single episode of wrongful *sexual* conduct. That Moore said she felt uncomfortable or embarrassed does not mean it could have been mere negligent touching or nonsexual conduct of the sort alleged in *Horace Mann.*

However, as noted, the next day, Derrick carried her around, and she was afraid others were looking out of the windows and may have seen them. This physical contact with Moore was temporally and spatially separate from the previous night's groping. Moreover, it does not reflect inherently sexual or harmful acts of molestation. Indeed, a trier of fact could reasonably find it to be inappropriate and negligent conduct that caused or appeared to cause Moore public embarrassment.

We cannot distinguish this alleged conduct from that in *Horace Mann.* (See fn. 7, *ante,* p. 659.) Thus, as in *Horace Mann,* there was potential liability for public embarrassment that triggered a duty to defend.

## VII. *Conclusion*

The molestation of a student by a teacher cannot reasonably be deemed to have occurred while the teacher was "acting within the scope" of his or her duties as a teacher. Thus, the District's insurance policy would not cover damages arising from the acts of molestation as alleged by Daly, Fouts, or Moore. Consequently, Century had no duty to defend Derrick unless the complaints also alleged nonsexual tortious conduct by Derrick that is separable from and unrelated to the alleged molestation.

Here, the trial court concluded that State Farm was entitled to reimbursement for all costs in defending Derrick because Century had a duty to defend him against all of the claims asserted by the three plaintiffs. However, as discussed, Century had no duty to defend Derrick against any of the claims

asserted by Daly and Fouts. Moreover, there are factual issues concerning the possible allocation of defense costs and amount of reimbursement to which State Farm is entitled which, as a result of its ruling, the trial court did not consider. Under the circumstances, therefore, we conclude the trial court erred in granting State Farm's motion for summary judgment.[10]

## VIII. *Disposition*

The judgment is reversed. Century is entitled to its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied December 23, 1997, and the opinion was modified to read as printed above.

---

[10]Given our conclusion, we need not address Century's claim that the trial court erred in finding no triable issue of fact concerning the amount it had to reimburse State Farm for the cost of providing Derrick's defense.