[No. C018198. Third Dist. Feb. 3, 1995.]

JANE D., Plaintiff and Appellant, v.
ORDINARY MUTUAL, Defendant and Respondent.

644

## COUNSEL

Mary K. Stroube, Shepard & Haven and Kenneth B. Shepard for Plaintiff and Appellant.

Fisher & Hurst and Barbara A. Goode for Defendant and Respondent.

## OPINION

**MORRISON, J.**—Plaintiff Jane D. brought suit against Father Michael Dermody. Beginning when she was 15, she sought counseling from him and he induced her to have sexual relations with him. Her suit resulted in a default judgment. Plaintiff then brought a declaratory relief action seeking to establish coverage for that judgment under a policy issued by defendant The Ordinary Mutual. Defendant's motion for summary judgment was granted and plaintiff appeals from the subsequent judgment. She contends several of

her theories of coverage were ignored and material factual issues remain. We affirm.

## Factual and Procedural Background

In 1990, plaintiff brought suit against Father Michael Dermody and the Diocese of Sacramento Education and Welfare Corporation. The complaint contained causes of action for negligence, negligent infliction of emotional distress, and breach of fiduciary duty. Plaintiff alleged she sought counseling, advice and direction from Father Dermody for over 20 years beginning in 1965. During this counseling Father Dermody obtained information about her that he used to influence and control her behavior. Father Dermody encouraged and induced plaintiff to engage in sexual relations with him. She felt great emotional distress when the relationship ended and sought independent counseling. She then learned the sexual contact with Father Dermody was "inappropriate, abusive, wrongful and the proximate cause of her injuries." She claimed she suffered great emotional and physical harm.

Father Dermody did not respond to the lawsuit and plaintiff obtained a default judgment against him. The suit was dismissed as to the diocese.

Plaintiff brought a declaratory action against defendant. Defendant had issued a liability insurance policy to the Roman Catholic Bishop of Sacramento, a corporation sole (the Diocese). Plaintiff sought a declaration that Father Dermody was covered by the policy and that defendant was obligated to pay the full policy limit to plaintiff in satisfaction of the default judgment.

Defendant is a captive insurance company composed of 13 Roman Catholic bishops.[1] In 1987 it issued a comprehensive general liability and automobile liability policy to the Diocese. The policy provided $15 million coverage for bodily injury and property damage. The Diocese was the "named insured"; employees acting within the scope of their employment were included as "persons insured."

The policy included a number of endorsements. The pastoral and counselor's professional liability form provided under coverage: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured and arising out of the performance of professional services for others in the insured's capacity as a pastor or counselor." The term "insured" included the Diocese and pastors, "any religious including priests, nuns and brothers and any social workers, employees or volunteers while acting within the scope and

---

[1] Defendant's name alludes to the fact that an ordinary is another name for a bishop.

duties in providing pastoral or counselling services on behalf of [The Diocese]." Among the acts excluded from coverage was "licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act."

There was also a sexual misconduct endorsement. The original one provided "coverage for claims arising out of the sexual misconduct, abuse or molestation of any person by any employee, to include incardinated priest and other officially appointed and/or approved religious working on behalf of the Dioceses, or any volunteer worker" subject to certain special conditions and limitations.

This form was superseded by the sexual misconduct liability exclusions, limitations, and coverage form, claims-made basis (the Sexual Misconduct Form). This endorsement was retroactively effective to the date the policy was originally issued. Under it defendant agreed to pay a maximum of $1 million on behalf of the named insureds for damages due to "any claim made against such Named Insureds arising out of sexual misconduct, sexual abuse, sexual harassment or sexual molestation of or by any person," subject to certain conditions. It also provided: "No other endorsement to the policy is intended to provide coverage for any claims concerning sexual misconduct, sexual abuse, sexual harassment, or sexual molestation of or by any person." The "named insureds" were the corporations sole which were the policyholders and affiliated subsidiary corporations. Additional persons insured were individuals who were so designated at the company's (defendant's) discretion, by written notice to such person.

After answering the complaint, defendant moved for summary judgment. Defendant contended it was obligated to pay the default judgment only if Father Dermody was an insured under the Sexual Misconduct Form. Since he was neither a named insured nor an additional person insured, defendant asserted there was no coverage and summary judgment was proper. Defendant set forth 31 undisputed facts, based on the language of the policy and the deposition of Theodore Keiler, the underwriting manager for defendant. According to Keiler, the Sexual Misconduct Form did not provide coverage for priests accused of sexual misconduct, and the bishops never intended to provide such coverage. Keiler had drafted the form with the assistance of counsel. No one had been designated an additional person insured, so only the bishops had coverage for claims based on sexual misconduct.

Plaintiff opposed this motion. She objected to many of defendant's undisputed facts concerning the coverage of the policy. She claimed such facts were legal conclusions and lacked foundation. She disputed that the policy

did not cover the claim which resulted in the default judgment. She also disputed that Father Dermody was not an additional person insured under the Sexual Misconduct Form. In support of this position she noted that employees were additional persons insured under the general liability policy. She also provided a letter from Keiler to Bishop Quinn. The letter stated:

"In compliance with the procedures for handling sexual misconduct incidents under the terms of the policy of The Ordinary Mutual, this is to advise you that no coverage exists for any act of Reverend Michael Dermody on or after September 26, 1989, based upon allegations of sexual misconduct of which the Diocesan Sensitive Claim Team was made aware. [¶] The Diocesan Team determined that there are sufficient grounds to suspect misconduct, but if it subsequently finds there are no grounds for the accusation, full coverage will be retroactively restored and you will be given official notification. Otherwise, the procedures provide that you may apply to the Board of Directors of The Ordinary Mutual after the individual has had treatment and a minimum of five incident f[r]ee years from the date coverage ceased if you wish to request reinstatement of coverage on Reverend Michael Dermody."

Plaintiff also provided minutes of the sensitive issues committee of June 4, 1991, stating such minutes indicated that the same position was taken in regard to insurance coverage for other priests accused of sexual misconduct. In the discussion of a particular priest accused of sexual misconduct, these minutes provided in part: "Mr. Keiler pointed out that there was a substantial out-of-court settlement in this case. He went on to explain that once Chancery officials have reasonable grounds to suspect sexual misconduct, the Ordinary Mutual (insurance) suspends coverage for that individual for at least five years. Coverage was suspended for Father _____ as of 1986. The five year period would be up this year, at which time Bishop Quinn may request coverage be reinstated."

The court tentatively ruled in favor of defendant, finding Father Dermody was not a named insured under the policy. This tentative ruling was affirmed and judgment was entered for defendant.

## DISCUSSION

### I. *Standard of Review*

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ.

Proc., § 437c, subd. (c).) To succeed on a motion for summary judgment, the defendant must negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis is there a material factual issue requiring a trial. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

Because the motion for summary judgment raises only questions of law concerning the construction and effect of supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis as required of the trial court. (*Perkins* v. *Howard* (1991) 232 Cal.App.3d 708, 712 [283 Cal.Rptr. 764].) First, we look to the pleadings to identify the issues of the case; the motion must respond to these allegations by establishing a complete defense or showing there is no factual basis for relief on any theory contemplated by the pleadings. Then we determine if the moving party has established facts which negate the opposing party's claim and justify a judgment in the moving party's favor. If so, a prima facie case for summary judgment has been made. The final step is to determine whether the opposing party's papers raise a triable, material issue of fact. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) The papers of the moving party are strictly construed and those of the opponent liberally construed, while any doubts as to the propriety of the motion are resolved in favor of the opposing party. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134].)

## II.  *Duty to Defend*

An insurer has a duty to defend the insured whenever it ascertains facts from the complaint, the insured or elsewhere that give rise to the potential of liability under the policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) Once the duty to defend attaches, the insurer is obligated to defend against all claims involved in the action, those not covered as well as those covered by the policy, until the insurer produces evidence supporting an allocation. (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) An insurer that wrongfully refuses to defend is liable on the judgment against the insured. (*Gray* v. *Zurich Insurance Co., supra,* at p. 279.)

Relying on these principles, plaintiff asserts defendant had a duty to defend Father Dermody. Plaintiff argues that defendant, having breached that duty, is now liable on the default judgment. Plaintiff contends this theory of recovery was ignored in the motion for summary judgment, and the court's order granting the motion is therefore defective.

Plaintiff, admittedly, is not an insured under the policy issued by defendant. Plaintiff's counsel wrote Father Dermody requesting an assignment of his cause of action against defendant for failure to defend. Plaintiff apparently received no response; she does not assert any such assignment. This action is brought under Insurance Code section 11580, which requires liability insurance policies to provide "whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (*Id.*, subd. (b)(2).) The policy contains such a provision.

■ The question plaintiff's contention raises is whether a third party judgment creditor of the insured may bring suit against the insurer for breach of the duty to defend. Absent an assignment, the answer is no; a third party claimant cannot bring an action upon a duty owed to the insured. (*J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1018 [278 Cal.Rptr. 64, 804 P.2d 689].)

In *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098], the widow and son of a slaying victim brought suit to recover from the slayer's liability insurer. Following the jury verdict, the court granted a new trial on the issue of whether the killing was willful. Seeking to foreclose the new trial, plaintiffs argued the issue of willfulness was irrelevant and judgment should have been entered in their favor because the insurer breached its duty to defend the insured. In rejecting this argument, the court stated plaintiffs could not claim the duty to defend absent an assignment of the insured's right. (*Id.* at p. 889.)

Even assuming defendant had a duty to defend Father Dermody, plaintiff cannot prevail on this contention. Since plaintiff has no cause of action based on this duty, defendant was not required to negate it in order to prevail on its motion for summary judgment. That there might be a factual issue as to whether Father Dermody tendered his defense to defendant is of no consequence.

### III.  *Indemnity Under the Comprehensive General Liability Policy*

Plaintiff contends Father Dermody was covered under the general liability policy and the injuries plaintiff suffered come within the terms of this policy. She contends the court erred in failing to address this aspect of her argument below because it focused solely on the Sexual Misconduct Form.

The general liability policy provided coverage for sums the insured was legally obligated to pay as damages because of bodily injury or property

damage caused by an occurrence. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Plaintiff contends this language provides coverage for Father Dermody's negligent and wrongful acts in counseling plaintiff.

■ "It is well established that an insurance contract may be limited with respect to the coverage or liability by an endorsement. [Citation.] The language of such endorsement prevails over the general language contained in the body of the policy if the language of the endorsement is free from ambiguity. [Citation.]" (*McFarland* v. *New Zealand Ins. Co.* (1959) 176 Cal.App.2d 422, 424 [1 Cal.Rptr. 482].) In construing insurance contracts it is also settled that " 'a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates.' [Citation.]" (*Southern Cal. Edison Co.* v. *Harbor Ins. Co.* (1978) 83 Cal.App.3d 747, 759 [148 Cal.Rptr. 106].)

At most, plaintiff's complaint identifies negligent counseling and sexual misconduct as the bases of her claim. There is an endorsement addressing each. The pastoral and counselor's professional liability form provides coverage for "any act or omission of the insured and arising out of the performance of professional services for others in the insured's capacity as a pastor or counselor." The Sexual Misconduct Form is explicit that it alone provides coverage for "claims concerning sexual misconduct, sexual abuse, sexual harassment, or sexual molestation of or by any person." Even if the general liability policy covers plaintiff's claims, these specific endorsements prevail over the more general terms of the general liability policy. (*Southern Cal. Edison Co.* v. *Harbor Ins. Co.*, *supra*, 83 Cal.App.3d at p. 759.) We turn now to each endorsement to determine whether either provides coverage.

### IV. *Pastoral and Counselor's Professional Liability Form*

■ Plaintiff contends there is coverage under the pastoral and counselor's professional liability form because "[i]t is the mishandling of the counseling relationship, not the sexual act, that forms the basis for negligence." Since the Sexual Misconduct Form speaks to coverage for acts of sexual misconduct and the pastoral and counselor's professional liability form contains an exclusion for "licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act," there can be coverage under this endorsement only if the default judgment was based on a claim other than sexual misconduct.

The default judgment admitted the material allegations of the complaint. (*Jackson* v. *Bank of America* (1986) 188 Cal.App.3d 375, 387 [233 Cal.Rptr. 162].) Accordingly, we look to the complaint to determine whether it contains allegations based on other than sexual misconduct. Plaintiff contends that it does. She cites the allegations that Father Dermody acquired information from plaintiff during counseling which he used to influence and control her behavior; plaintiff felt great emotional distress when the relationship with Father Dermody ended; Father Dermody used counseling techniques to encourage plaintiff to reveal her past history and emotional problems and negligently used these techniques to induce plaintiff to project onto him feelings of affection, love, and sexual attraction ("transference").

An allegation of sexual misconduct does not preclude coverage if there are other allegations of conduct that is covered, as illustrated in *Horace Mann Ins. Co.* v. *Barbara B., supra*, 4 Cal.4th 1076. The issue in *Horace Mann* was whether the insurer had a duty to defend a band teacher accused of sexual molestation of a 13-year-old student; the complaint also alleged other harassing conduct. The teacher had pleaded nolo contendere to one count of a lewd and lascivious act upon a minor arising from his molestation of the student. The insurer took the position that in light of this conviction, it had no duty to defend the teacher. The lower courts agreed; summary judgment was entered in the insurer's favor and affirmed on appeal.

The Supreme Court reversed. It found there were factual disputes as to the teacher's misconduct towards the student, apart from the molestation. These factual disputes gave rise to a potential for coverage, and thus a duty to defend. (*Horace Mann Ins. Co.* v. *Barbara B., supra*, 4 Cal.4th at p. 1083.) The amended complaint alleged sexual and nonsexual acts with the student. In opposition to the motion for summary judgment, counsel for the student submitted a letter detailing the teacher's misconduct. The court found the gravamen of certain "parasexual" conduct—allowing the student to sit on his lap, kissing her, hugging her, and putting his arm around her—was that these acts were committed in front of other students, causing the student public embarrassment. (4 Cal.4th at p. 1084.) The insurer had not shown these allegations of public misconduct were inherently harmful, amounted to sexual molestation, or were inseparably intertwined with the allegations of molestation; therefore, the insurer had not made the showing necessary to eliminate its duty to defend. (*Id.* at pp. 1084-1085.)

Here, we are concerned not simply with the potential for coverage, which gives rise to a duty to defend, but actual coverage. Nonetheless, the analysis of *Horace Mann* is still applicable. In the summary judgment context, if plaintiff could show even a potential for coverage, that showing would

create a question of fact as to whether there was actual coverage. That factual question would be sufficient to defeat the motion for summary judgment.

In reviewing the allegations of the complaint, we find the allegations of nonsexual conduct—obtaining information about plaintiff during counseling and using this information and misusing counseling techniques to create transference and to control and induce plaintiff's behavior—were "inseparably intertwined" with the sexual misconduct. (*Horace Mann Ins. Co.* v. *Barbara B.*, *supra*, 4 Cal.4th at p. 1085.) Plaintiff's complaint alleges Father Dermody's misuse of his counseling position resulted in the inducement for her to engage in sexual relations with him. He used the information he learned about plaintiff to influence and control her behavior and he utilized the feelings created by transference to create a sexual relationship. None of the allegations of Father Dermody's malfeasance in counseling stands separate from the allegation of sexual misconduct. Accordingly, there is no coverage under the pastoral and counselor's professional liability form.

Our analysis is consistent with that of a Minnesota court in a very similar case. In *Houg* v. *State Farm Fire and Cas. Co.* (Minn.Ct.App. 1992) 481 N.W.2d 393, Houg, a pastor, brought a declaratory action seeking to determine his insurer's duty to defend him in an action brought by a parishioner, M.C. M.C.'s complaint alleged she sought counseling from Houg and during the counseling. he "set out on a course of conduct designed to entice and seduce [M.C.] into sexual relations." Due to Houg's deceptive psychotherapeutic practices and M.C.'s emotional vulnerability and dependence on him, Houg succeeded in seducing and coercing her into a sexual relationship. (*Id.* at p. 395.) Seeking a defense, Houg argued the complaint alleged "negligent counseling." The court rejected this attempt to bring the allegations within the potential for coverage and affirmed summary judgment for the insurer. "[A]ny alleged negligence in Houg's counseling centers on his entering into a sexual relationship with M.C. Any negligent counseling is so intertwined with Houg's sexual exploitation of a psychologically dependent person as to be inseparable." (*Id.* at p. 397.)

## V. *Sexual Misconduct Form*

The Sexual Misconduct Form provides coverage for named insureds, the Diocese, and additional insureds so designated by defendant. Plaintiff does not contend Father Dermody is a named insured; however, she asserts there is a factual issue as to whether he is an additional insured.

Relying on Keiler's deposition, defendant asserted as undisputed facts that no parish priests had been named as "additional persons insured" and that Father Dermody was not an "additional person insured" under the Sexual Misconduct Form. Plaintiff did not object to these facts; however, she did dispute them.[2] She claims a factual issue as to whether Father Dermody is an "additional person insured" under the Sexual Misconduct Form arises from Keiler's letter to Bishop Quinn advising there was no coverage for any act of Father Dermody after September 26, 1989, and similar language regarding coverage for sexual misconduct by another priest in the minutes of the sensitive issues committee.

Plaintiff reads both the letter and the minutes to indicate that coverage *for the priest* terminated once his misconduct became known. However, the letter to Bishop Quinn speaks of coverage "for any act of Reverend Michael Dermody on or after September 26, 1989." This language is entirely consistent with defendant's position that only named insureds, here the Sacramento Diocese, had coverage for sexual misconduct committed by a priest. Keiler simply advised the bishop that the Diocese's coverage ceased as to later acts by Father Dermody. Plaintiff argues this interpretation renders the endorsement meaningless. If only the corporations sole and subsidiaries have coverage for acts of sexual misconduct, she claims there is no coverage at all because corporations cannot commit sexual misconduct. Plaintiff overlooks the possibility of the Diocese being held liable for the sexual misconduct of a priest on theories of respondeat superior, negligent supervision, or negligent hiring. (See Annot., Liability of Church or Religious Society for Sexual Misconduct of Clergy (1992) 5 A.L.R.5th 530 and cases cited.)

Keiler's letter to Bishop Quinn does not indicate that under defendant's policy Father Dermody personally had coverage for his alleged sexual misconduct. Indeed, one would expect such a letter to be addressed to Father Dermody. Plaintiff has provided no evidence to counter Keiler's deposition testimony that Father Dermody was not an additional insured. At best, plaintiff responds to defendant's motion for summary judgment with equivocal evidence to create a triable issue of material fact. In opposing a motion for summary judgment, plaintiff must make an independent showing she has sufficient proof to raise a triable question of fact. (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 948 [203 Cal.Rptr. 879].) Plaintiff's equivocal evidence is not sufficient. (*Ahrens* v. *Superior Court* (1988) 197 Cal.App.3d 1134, 1152 [243 Cal.Rptr. 420].)

[2]Plaintiff objected to many of defendant's undisputed facts. On appeal she complains "the court did not bother to consider" her objections. The trial court did not rule on the objections. Because counsel failed to obtain rulings, the objections are waived. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

The judgment is affirmed.

Puglia, P. J., and Brown, J., concurred.

A petition for a rehearing was denied March 2, 1995, and appellant's petition for review by the Supreme Court was denied April 20, 1995.