Filed 5/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| IGOR DAZA, | B261525 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. BC485428) |
| v. | |
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed.

Law Office of Marilyn M. Smith, Marilyn M. Smith; the Torgow Law Firm, Martha A. Torgow; Law Office of Ann C. Schneider and Ann C. Schneider for Cross-complainant and Appellant.

Wood, Smith, Henning & Berman, Daniel A. Berman, Stacy L. Douglas, Shannon M. Benbow and Brandon C. Murphy for Cross-defendant and Respondent.

* * * * * *

This case requires us to interpret provisions of the California Tort Claims Act (Gov. Code, § 810 et seq.)[1] requiring public employers to defend and indemnify their employees for third party claims arising out of acts within the scope of employment. (§§ 825-825.6, 995-996.6.)  These provisions provide "that in the usual civil case brought against a public employee, a public entity must provide a defense to the employee (§ 995 et seq.) and pay any claim or judgment against him.  (§ 825 et seq.)  Where the public entity refuses to defend, the employee can seek a writ of mandate . . . .  Alternatively, he can fund his own defense and then sue for reasonable attorney fees, costs and expenses incurred if the action or proceeding arose out of an act or omission in the scope of his employment as an employee of the public entity, but recovery is barred if the agency establishes the employee acted or failed to act because of 'actual fraud, corruption or actual malice.'  (§ 996.4.)"  (*Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, 746 (*Stone*).)

In this case, an adult student sued the Los Angeles Community College District (the District) and Igor Daza, a guidance counselor employed by the District, alleging Daza sexually assaulted her when she went to his office for counseling services (the main lawsuit).  The District refused to defend him, so he paid for his own defense and filed a cross-complaint denying the allegations of sexual assault and seeking indemnity and reimbursement for his defense.  After the District settled the main lawsuit without admitting liability and without a factual determination of whether Daza was acting within the scope of his employment, the student dismissed all her claims against the District and Daza with prejudice.  The District then demurred to Daza's cross-complaint, arguing the student's *allegations* of sexual assault in the main lawsuit fell outside the scope of Daza's employment as a matter of law.  Daza opposed, arguing he was not limited to the allegations in the main lawsuit in carrying his burden to prove the acts fell within the scope of his employment.  The trial court agreed with the District and refused to look

---

[1]    All undesignated statutory citations are to the Government Code unless otherwise noted.

beyond the allegations in the main lawsuit to hold as a matter of law that the alleged acts of sexual assault fell outside the scope of Daza's employment.

We reverse. We agree with the trial court that the sexual assault *alleged* in the main lawsuit fell outside the scope of Daza's employment as a matter of law. But under a proper interpretation of section 996.4, the determination of whether an employee acted within the scope of employment is factual and cannot be limited to the third party's allegations in the underlying lawsuit when the employee denies those allegations, and the employee's version of events would demonstrate acts within the scope of employment.

## BACKGROUND

As alleged in her operative first amended complaint (FAC), plaintiff Jazmyne Goodwin was an adult student at Los Angeles Southwest College (LASC), a school within the District. Daza worked as a guidance counselor and advisor for LASC, and at all times was an employee and agent for LASC and the District. His responsibilities included providing educational and emotional counseling for students like Goodwin. In that capacity, he was assigned to Goodwin as a counselor, which created a special relationship between her and Daza and the District. He used his position of authority to sexually harass and molest her.

In the evening of May 3, 2011, she went to Daza's office to meet with him to discuss (1) the problem with the humanities class she had dropped; (2) the fashion classes at Trade Tech; and (3) possible field trips to see various colleges to get her bachelor's degree. When she entered his office, he closed the door and took her cell phone from her. He examined the pictures on the phone without her consent, telling her, "You take a lot of pictures. I like the one with your nipple ring. I am going to send the picture to myself." Surprised and shocked, she told him not to send it. Nonetheless, he sent the picture to his cell phone.

Upset, Goodwin got up to leave. Daza grabbed her wrist and pulled her toward him. He said, "Are you a freak? I heard Aries are freaks." She pushed him away. He said, "If you don't want me to touch you, maybe you would like me to lick you." She responded, "No. I want to leave." She told him she had a boyfriend and said, "It's too

much for me." She could not leave because he was blocking her path. He touched, caressed, and kissed her neck, placed his left hand in her dress on the upper part of her breast, and asked if he could see her nipple ring. She pushed him away. He was still holding her hair, but finally let her go. She left the office, and he followed her. He said he did not notice her butt was that big and she should really think about going on a date with him. She walked to her car, and he continued to follow her. At this point, she was shocked to see he had sent the photo of her nipple ring to his own cell phone. He did all this for his own sexual gratification.

A criminal investigation of this incident was commenced, and on May 31, 2012, Daza resigned his employment with the District. He was paid a $73,000 severance bonus.

The FAC alleged 13 causes of action, including claims against Daza for negligence; statutory breach (Gov. Code, §§ 815.2, 820); intentional infliction of emotional distress; sexual battery (Civ. Code, § 1708.5); battery; assault; sexual harassment (Civ. Code, § 51.9); gender violence (Civ. Code, § 52.4); false imprisonment; negligent sexual abuse; and sexual harassment (Civ. Code, § 51.9—Ralph Act). The District eventually settled the lawsuit with Goodwin without admitting liability, and Goodwin dismissed the complaint against both the District and Daza with prejudice.

After protracted procedural wrangling not pertinent to this appeal, Daza filed a third amended cross-complaint (TACC), which alleged three cross-claims against the District: (1) statutory defense (§§ 825, 995); (2) statutory indemnity (§§ 825, 825.2); and alternatively (3) a petition for a writ of mandate to compel the District to provide a defense and indemnity. Daza denied all of Goodwin's allegations of sexual assault in the main lawsuit and denied he believed his acts were unlawful. He acknowledged his resignation and his severance payment of $73,000. He alleged his settlement agreement with the District included a clause stating that he and the District "agree that nothing in this Agreement reduces, nullifies, or otherwise affects the rights and responsibilities of the Parties to defense and indemnification pursuant to the Government Code, Education Code and any other provision of law or regulation including, specifically but without

4

limitation, those rights and responsibilities in the Government Code Division 3.6, including, without limitation, those provisions in Part 2 Chapter 1 Article 4, commencing with Section 825, and Part 7 commencing with Section 995." He also alleged the District never afforded him an evidentiary or other hearing on the issue of defense and indemnity, and it never made a determination that he was not acting within the scope of his employment or acted with actual fraud, corruption, or actual malice.

The District demurred to the TACC. It argued Daza's claim for indemnity failed because the District entered a settlement with Goodwin that resulted in dismissal of her lawsuit with prejudice, so Daza was not required to pay any claim or judgment. It also argued Daza's claim for reimbursement for his defense and a writ of mandate failed because his alleged conduct fell outside the scope of his employment as a matter of law. Although not stated explicitly, this argument presupposed that determination was limited to the allegations in the main lawsuit.

In opposition, Daza conceded his indemnity claim was moot in light of Goodwin's settlement and dismissal of the main lawsuit, but he disagreed his claims for a defense and for a writ of mandate failed. He argued Goodwin's allegations did not allege conduct that fell outside the scope of his employment as a matter of law and, since he denied the allegations, there has been no factual determination that he committed the acts Goodwin alleged. Alternatively, Daza requested leave to amend to allege additional facts refuting Goodwin's allegations and to add a declaratory relief claim under his settlement agreement with the District.

The trial court initially overruled the demurrer because there had been no factual determination in the main lawsuit that Daza had sexually assaulted Goodwin or that he was acting outside the scope of his employment.[2] But relying on a newly issued

---

[2]     The court granted judicial notice of three items: the District's board rules, article III, sections 8300 and 8302 regarding guidance counseling services; the settlement agreement between the District and Goodwin; and the settlement agreement between Daza and the District.

appellate opinion in the insurance context that was subsequently depublished,[3] the trial court reversed course and sustained the demurrer and dismissed the cross-complaint with prejudice. It concluded it was limited to reviewing the allegations in Goodwin's main lawsuit and held those allegations showed as a matter of law that Daza was acting outside his scope of employment.

## DISCUSSION[4]

### 1. *Legal Standards*

We review an order sustaining a demurrer de novo, exercising our independent judgment to determine whether the complaint states a cause of action as a matter of law. (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508-1509 (*McMahon*).) "We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citation.] We deem all properly pleaded material facts as true. [Citation.] We also accept as true those facts that may be implied or inferred from those expressly alleged." (*Id.* at p. 1509.) We review the denial of leave to amend for abuse of discretion, considering whether the plaintiff has shown a "reasonable possibility" any defect in a cause of action could be cured by amendment. (*Ibid.*)

### 2. *Analysis*

By statute, a public employer generally has the obligation to defend an employee in a civil lawsuit arising from acts the employee has taken within the scope of employment: "Except as otherwise provided in Sections 995.2 and 995.4, upon request of an employee or former employee, a public entity shall provide for the defense of any

---

**3** The case was *Baek v. Continental Casualty Co.* (Oct. 6, 2014, B251201), review denied and ordered not officially published on January 14, 2015. Before depublication, the trial court sua sponte reconsidered its ruling in this case and ordered the parties to file supplemental briefs on *Baek*, which they did.

**4** Daza does not challenge the dismissal of his indemnity claim as moot, so we will not address it. And like the parties, we will treat the parties' arguments as applying equally to Daza's claims for reimbursement under section 996.4 and for a writ of mandate.

civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity." (§ 995.)

When the employee requests a defense, the employer "may refuse to provide for the defense of a civil action or proceeding brought against an employee or former employee if the public entity determines any of the following: [¶] (1) The act or omission was not within the scope of his or her employment. [¶] (2) He or she acted or failed to act because of actual fraud, corruption, or actual malice. [¶] (3) The defense of the action or proceeding by the public entity would create a specific conflict of interest between the public entity and the employee or former employee. . . ." (§ 995.2, subd. (a).) The employer has 20 days from receiving a written request to inform the employee whether it will or will not provide a defense and the reason for its refusal. (§ 995.2, subd. (b).) If the employee is dissatisfied with the employer's decision, he or she may pursue a petition for a writ of mandate to compel the employer to provide a defense. In that circumstance, the employee bears the burden to show the acts or omissions fell within the scope of employment (*Stone, supra*, 77 Cal.App.4th at p. 746), but the employer's decision will be sustained if it is "within the range of reason" (*id.* at p. 748).

Alternatively, if the employer refuses to provide a defense, the employee may pay for his or her own defense and seek reimbursement from the employer: "If after request a public entity fails or refuses to provide an employee or former employee with a defense against a civil action or proceeding brought against him and the employee retains his own counsel to defend the action or proceeding, he is entitled to recover from the public entity such reasonable attorney's fees, costs and expenses as are necessarily incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his employment as an employee of the public entity, but he is not entitled to such reimbursement if the public entity establishes . . . that he acted or failed to act because of actual fraud, corruption or actual malice . . . ." (§ 996.4.) This remedy does not eliminate an employee's "right to petition for a writ of mandate to compel the public entity or the governing body or an employee thereof to perform the

7

duties imposed by this part." (*Ibid.*) As with a request under section 995.2, the employee bears the burden under section 996.4 to prove the action arose from acts or omissions within the scope of employment. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1002 (*Farmers*); *Stone, supra*, 77 Cal.App.4th at pp. 746, 748, fn. 10 [noting the employer's determination at the first step that the employee's conduct was outside the scope of employment is "not the last word, of course. Under section 996.4, [the employee] could pay for his own defense and then recover from the [employer] by establishing that the [plaintiffs'] suit *did* arise out of actions taken within the scope of his university employment"].)

Before we reach the main question of whether Daza was limited to the allegations in the main lawsuit to establish his claim under section 996.4, we necessarily reject his contention the allegations themselves showed acts arising from the scope of his employment. An employee's willful and malicious intentional torts, including those that might contravene an employer's express policies, do not automatically fall outside the scope of employment. (*Farmers, supra*, 11 Cal.4th at p. 1004.) But to fall within the scope of employment, the intentional misconduct must be "an 'outgrowth' of the employment" and the risk of tortious injury must be ""'inherent in the working environment'"" or ""'typical of or broadly incidental to the enterprise [the employer] has undertaken.'"" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298 (*Lisa M.*); see *John Y. v. Chaparral Treatment Center, Inc.* (2002) 101 Cal.App.4th 565, 575 (*John Y.*).) Similarly, the intentional conduct must be foreseeable from the employee's duties, which means "'in the context of the particular enterprise,'" the conduct was "'not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" (*Lisa M., supra*, at p. 299.)

Sexual assaults are not per se beyond the scope of employment. (*Lisa M., supra*, 12 Cal.4th at p. 300; *John Y., supra*, 101 Cal.App.4th at p. 575.) But courts have rarely held an employee's sexual assault or sexual harassment of a third party falls within the scope of employment. (See, e.g., *Lisa M., supra*, at p. 294 [technician's sexual

8

molestation of patient during ultrasound not within scope of employment]; *Farmers, supra*, 11 Cal.4th at p. 997 [deputy sheriff's sexual harassment of other deputy sheriffs working at county jail outside scope of employment]; *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441, 447-452 [teacher's sexual molestation of student at teacher's apartment during sanctioned extracurricular program not within scope of employment]; *Z.V. v. County of Riverside* (2015) 238 Cal.App.4th 889, 891, 896-897 (*Z.V.*) [social worker's sexual assault of minor outside of work hours and at social worker's apartment not within scope of employment]; *John Y., supra*, at pp. 576-577 [counselor's sexual molestation of minor living in residential facility not within scope of employment]; *Alma M. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139-140 [school janitor's rape of student in janitor's office not within scope of employment]; but see *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 206-207 (*Mary M.*) ["unique" case of on-duty police officer's misuse of official authority to rape woman he detained falls within scope of employment].)

Consistent with the vast weight of authority, we conclude Goodwin's allegations of sexual assault against Daza fell outside his scope of employment as a guidance counselor for the District. His alleged conduct was not an outgrowth of his employment, it was neither inherent in nor typical of the District's educational enterprise, and it was not foreseeable from Daza's duties as a guidance counselor. (Compare *John Y., supra*, 101 Cal.App.4th at p. 577 [sexual assault not foreseeable because counselor's employment did not "'predictably . . . create the risk employees will commit intentional torts of the type for which liability is sought.'"].) As courts have done in other cases, we reject Daza's analogy to *Mary M.*, which imposed vicarious liability based on "the unique position of police officers with their ability to arrest and use deadly force," coupled with their "'substantial degree of authority'" and the use of that authority over the motorist plaintiff. (*Z.V., supra*, 238 Cal.App.4th at pp. 894-895; see *Lisa M., supra*, 12 Cal.4th at p. 304 [distinguishing *Mary M.* because it was expressly limited to the unique authority of police officers]; *Farmers, supra*, 11 Cal.4th at pp. 1012-1013 [distinguishing *Mary M.* on same ground].)

9

We also reject Daza's contention that *some* of his alleged acts not amounting to sexual assault might have fallen within the scope of his employment, such as taking Goodwin's cell phone without permission and viewing photographs on it. Goodwin did not sue for these acts standing alone; she sued for his alleged *sexual* assault and the allegations of Daza's nonsexual and sexual conduct were inextricable intertwined. (See *State Farm Fire & Casualty Co. v. Century Indemnity Co.* (1997) 59 Cal.App.4th 648, 664 [insurer had no duty to defend teacher against claims of sexual molestation because arguably nonsexual physical contact between teacher and students was "integral to and inseparable from the alleged molestation, in that it was either concurrent with or a prelude to it and part of indivisible incidents of molestation"]; *Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643, 653 [finding plaintiff's "nonsexual conduct— obtaining information about plaintiff during counseling and using this information and misusing counseling techniques to create transference and to control and induce plaintiff's behavior—were 'inseparably intertwined' with the sexual misconduct"].)

Having concluded Daza's *alleged* acts of sexual assault fell outside his scope of employment, we now turn to the main issue in this case—was Daza limited to those allegations in carrying his burden to show the action arose from acts within the scope of his employment? For several reasons, we conclude he was not, and the trial court erred in holding otherwise. By alleging in his cross-complaint that no sexual assault occurred, Daza has sufficiently stated a claim for reimbursement under section 996.4.

This is largely an issue of the proper interpretation of section 996.4, so "'[o]ur goal is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law."'" [Citation.] First, we must look to the words of the statute, which generally provide the most reliable indicator of legislative intent. [Citation.] If the statutory language is unambiguous, then we presume the Legislature meant what it said and our inquiry ends. [Citation.] We give words in a statute their plain and commonsense meaning, and we avoid a construction that would produce absurd results, which we presume the Legislature did not intend. [Citation.] We also 'do not construe statutes in isolation; rather, we construe every statute with reference

10

to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided.'" (*Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1454.)

Nothing in the language of section 996.4 limits Daza's ability to present *evidence* he was acting within the scope of employment, including by disproving the allegations in the main lawsuit. This section provides for reimbursement if the action "arose out of an act or omission" in the scope of employment, not out of an "*alleged* act or omission" in the scope of employment. This section also allows an employer to rebut the employee's showing by "establish[ing]" he or she acted with actual fraud, corruption, or actual malice, which contemplates an evidentiary showing. It would create an unfairly lopsided procedure to limit the employee's proof to the allegations in the underlying complaint but allow an employer to present evidence to defeat the employee's claim.

There is no case precisely on point, but the decision in *San Diego Police Officers Assn. v. City of San Diego* (1994) 29 Cal.App.4th 1736 (*San Diego*) comes close. In that case, an informant sued a police sergeant and his employer, the City of San Diego (the City), claiming the sergeant committed sexual battery on her. The City refused to provide a defense to the sergeant under section 995.2, subdivision (a)(1) and (2), so the San Diego Police Officers Association provided his defense. The case went to trial and a jury found no battery occurred; it did not reach the scope-of-employment question. The sergeant and Police Officers Association then filed a declaratory relief action under section 996.4 to recover the costs of his defense. In that action, the sergeant testified he was on vacation at the times of the alleged battery, his sexual encounters with the informant occurred at his condominium while he was off duty, and he believed they were strictly personal, having nothing to do with his employment. The trial court concluded the sergeant was not acting within the scope of employment as a matter of law and entered judgment for the employer. (*San Diego*, at pp. 1739-1740.)

The Court of Appeal affirmed. The undisputed facts showed the sergeant was not acting within the scope of his employment or misusing his authority when committing sexual acts with the informant. Most important, the court rejected the argument that it should focus on allegations in the underlying complaint, similar to duty-to-defend

11

insurance cases. "No authority is cited for this method of implementing section 996.4, and we decline the invitation for such innovation. This court previously held the Government Code provides an adequate framework for the protection of an officer's defense interests when an issue exists as to whether an officer was acting within the course and scope of his employment. (*Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, 199-200.) We reaffirm that holding." (*San Diego, supra*, 29 Cal.App.4th at pp. 1744-1745.)

The court quoted the January 2, 1963 California Law Revision Commission report proposing the adoption of section 996.4: "'A second remedy should, therefore, be available to the defendant when the public entity fails or refuses to defend him: He should be given a cause of action against the public entity to recover the reasonable expenses he necessarily incurs in defending the action or proceeding *if he establishes that the act or omission occurred in the scope of his public employment* and the public entity fails to establish that he was guilty of actual fraud, corruption or actual malice.' (Recommendation Relating to Sovereign Immunity, No. 4, Defense of Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) pp. 1305, 1308, italics added, fn. deleted.) The California Law Revision Commission's use of the word 'occurred' indicates it envisions actual occurrences in the scope of public employment, not mere allegations of such occurrences. The commission was also aware of the potential availability of civil remedies such as malicious prosecution when unfounded proceedings are brought against public personnel. (*Id.* at p. 1309.) [¶] Section 996.4 simply provides no remedy for an officer who is sued for acts which, although alleged to be, were not within the scope of the officer's employment. Any desire for modification of section 996.4 should be directed to the Legislature." (*San Diego, supra*, 29 Cal.App.4th at p. 1745.)

*San Diego* involved the inverse of the situation we have here—the evidence of sexual misconduct outside the scope of employment defeated, rather than substantiated, the employee's claim for reimbursement. Nonetheless, the court's reasoning applies. The focus under section 996.4 must be on "*actual* occurrences in the scope of public

12

employment, not mere *allegations* of such occurrences." (*San Diego, supra*, 29 Cal.App.4th at p. 1745, italics added.) Daza is entitled to substantiate his claim for reimbursement by proving no sexual assault *actually* occurred, regardless of Goodwin's allegations otherwise.[5]

Moreover, as we have noted, courts have placed the burden on the employee to show the acts in the underlying lawsuit arose from the scope of his employment. That *presupposes* the employee may go beyond the allegations in the underlying complaint and make an evidentiary showing on the scope of employment issue. (*Farmers, supra*, 11 Cal.4th at p. 1002 ["As the statutory provisions make clear, the burden rests upon the public employee to *establish* that the act or omission was within the scope of employment." (Italics added.)]; *Stone, supra*, 77 Cal.App.4th at p. 746 ["the employee bears the burden of *proving* his conduct was within the scope of employment" (italics added)].) Any other conclusion would render the employee's burden meaningless—the allegations in a complaint drafted by an antagonistic third party would constitute the final word on the scope of employment issue under section 996.4.

The District relies heavily *Zamudio v. State of California* (1998) 62 Cal.App.4th 673 (*Zamudio*), but it is distinguishable. The issue in that case arose at summary judgment, and there was no indication the parties disputed the facts of the sex discrimination alleged in the underlying lawsuit, unlike Daza's contention in this case. Instead, the issue was whether the Tort Claims Act "obligate[d] a public entity to defend an employee sued on account of an act or omission in the employee's capacity as a union representative." (*Zamudio*, at p. 675.) The court concluded the employer was not obligated to provide a defense because the acts *alleged* in the underlying complaint were based entirely on the employee's union duties, not his duties as a youth counselor for the

---

**5**     The District has not defended the trial court's analogy to duty-to-defend cases in the insurance context, so we need not delve into this issue. We merely note our agreement with *San Diego* that nothing suggests duty-to-defend principles from insurance law applies to the statutory duty to reimburse a public employee for defense costs pursuant to section 996.4. (*San Diego, supra*, 29 Cal.App.4th at p. 1744.)

California Department of Youth Authority (CYA). "[T]he thrust of section 995 is not what, as a factual matter, the employee actually was doing at a given moment, but whether the lawsuit was brought against the employee '*on account of* an act or omission in the scope of his [or her] employment . . . .' (§ 995, italics added.) The three words 'on account of' are key. The wrongful conduct alleged *against Zamudio* had nothing to do with his youth counselor functions. Rather, he was charged with failing to fulfill his responsibility as president of the Nelles chapter of [the union], by permitting the Nelles supervisors to breach and violate the terms of the contract between [the union] and the State concerning sex discrimination in the workplace." (*Id.* at p. 678.) In other words, "[t]he gist of the lawsuit is that Zamudio breached his duty as union representative by failing to put on his 'union hat' to protect plaintiffs. Had Zamudio not been a union officer, he would not have been sued. The lawsuit had nothing to do with acts or omissions stemming from Zamudio's status as a CYA youth counselor." (*Id.* at pp. 678-679.)

In contrast to *Zamudio*, there is no dispute the District employed Daza as a guidance counselor or that Goodwin sought his services in that capacity. The issue is whether Daza sexually assaulted her when she visited him in his office. If he did, as Goodwin alleged, he was acting outside the scope of his employment. If he did not, as Daza claims, he was acting within the scope of his employment. Thus, unlike in *Zamudio*, the issue turns precisely on whether a sexual assault *actually* occurred, not on whether Daza was acting in his capacity as a guidance counselor at the time.

Finally, any other conclusion would have unsettling consequences in this case. First, it would deprive Daza of a factual determination of whether Goodwin's claims are true. Because the District settled with Goodwin without admitting liability, Daza was unable to rebut Goodwin's allegations in the main lawsuit. Limiting him at this stage to Goodwin's serious—and as yet unproven—allegations would once again deprive him of that opportunity. Second, it would place the fate of Daza's reimbursement claim solely in Goodwin's hands—the very person accusing him of sexual assault. And finally, it would encourage employers to settle with third parties without admitting liability in order to

14

insulate themselves from later claims under section 996.4.  This cannot be—and, as we have explained, is not—the scheme created by the Tort Claims Act.

If we credit Daza's allegation that no sexual assault occurred, as we must at the demurrer stage, the evidence would show Goodwin came to his office and obtained counseling from him in his capacity as a guidance counselor for the District.  This is precisely within Daza's job duties, and therefore, within his scope of employment.  He has stated a claim for reimbursement of his defense costs under section 996.4 and the trial court erred in concluding otherwise.[6]

## DISPOSITION

The judgment is reversed.  Appellant is entitled to costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

---

[6]     Given our conclusion, we need not address Daza's arguments that the trial court's ruling violates equal protection or that he should have been granted leave to amend.

15